**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| HARLAN HALL WILLET, JR., <br><br> Plaintiff, <br> vs. <br><br> STATE OF IOWA, CCUSO, CORY TURNER, BRAD WITTROCK, CLINT FREDERICKSON, and PAM NELSON, <br><br> Defendants. | No. C 15-4237-MWB <br><br> **INITIAL REVIEW ORDER** |

**TABLE OF CONTENTS**

I. *IN FORMA PAUPERIS* STANDARD ................................................................. 2

II. 42 U.S.C. § 1983 INITIAL REVIEW ................................................................. 4
    A. *The Applicable Standard* ......................................................................... 4
    B. *Analysis* ................................................................................................ 5
        1. *State actors* ................................................................................... 5
        2. *Duplication of claims* ..................................................................... 6
        3. *Discrimination based on sexual orientation* ...................................... 8

III. MOTION TO APPOINT COUNSEL .................................................................. 11

IV. CONCLUSION ............................................................................................... 11

This matter is before me on the plaintiff's application to proceed *in forma pauperis* (docket no. 1). The plaintiff filed his application, along with a *pro se* 42 U.S.C. § 1983 complaint, on November 23, 2015. The plaintiff also filed a *pro se* motion to appoint

counsel (docket no. 2). The plaintiff is a detainee at the Civil Commitment Unit for Sexual Offenders (CCUSO) located in Cherokee, Iowa.

## I. IN FORMA PAUPERIS STANDARD

The filing fee for a 42 U.S.C. § 1983 petition is $350. 28 U.S.C. § 1914(a). The doctrine of *in forma pauperis* allows a plaintiff to proceed without incurring filing fees or other court costs. 28 U.S.C. § 1915(a)(1). Accordingly, plaintiffs who apply for and receive *in forma pauperis* status may file their case for free. However, under the Prison Litigation Reform Act (PLRA), prisoners must meet certain requirements in order to have their filing fee waived. 28 U.S.C. 1915(a)-(b). A prisoner is defined as "any person incarcerated or detained in any facility" for "violations of criminal law . . . ." 28 U.S.C. § 1915(h). Under the statute, prisoners are required to pay filing fees over time and are not entitled to proceed in forma pauperis as to filing fees. *Id*. However, CCUSO is not a prison facility; it "provides a secure, long-term, and highly-structured setting to treat sexually violent predators who have served their prison terms, but who, in a separate civil trial, have been found likely to commit further violent sexual offenses."[1] Moreover, the Iowa Code specifies that the types of persons confined at CCUSO are not prisoners. They are civilly committed patients who suffer from a "mental abnormality." I.C.A. § 229A (generally); I.C.A. § 229A.2(11). Numerous courts have considered the question of whether those patients committed to a state hospital are prisoners under 28 U.S.C. § 1915. The Eighth Circuit Court of Appeals has held that civilly committed individuals are not prisoners and are not subject to 28 U.S.C. § 1915(a)-(b). *Kolocotronis v. Morgan*, 247 F.3d 726, 728 (8th Cir. 2001). Other courts have reached the same

---

[1] Iowa Department of Human Services, Civil Commitment Unit for Sexual Offenders, http://dhs.iowa.gov/mhds/mental/in-patient/ccuso, last visited November 18, 2015.

conclusion. In *Michau v. Charleston County, S.C.*, 434 F.3d 725 (4th Cir. 2006), *cert. denied*, 549 U.S. 910 (2006), the Fourth Circuit Court of Appeals stated,

> However, [plaintiff] is presently being detained under the SVPA, which creates a system of civil, not criminal, detention. … *see also Kansas v. Hendricks*, 521 U.S. 346, 365-69 (1997) (concluding that Kansas's Sexually Violent Predators Act established civil rather than criminal detention scheme). Because [plaintiff's] detention under the SVPA is not the result of a violation of criminal law, or of the terms of parole, probation, or a pretrial diversionary program, he does not meet the PLRA's definition of [a prisoner]. *See … Page v. Torrey*, 201 F.3d 1136, 1139-40 (9th Cir. 2000) (concluding that a person detained under state's civil sexually violent predator act is not a prisoner within meaning of PLRA). Accordingly, the PLRA provides no basis for the dismissal of [plaintiff's] complaints.

434 F.3d at 727-28 (some internal citations omitted.); *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) ("We agree with *Page*, *Kolocotronis*, and the other opinions that have held the PLRA's straightforward definition of "prisoner" to apply only to persons incarcerated as punishment for a criminal conviction."); *Merryfield v. Jordan*, 584 F.3d 923, 927 (10th Cir. 2009) ("Accordingly, we hold that the fee payment provisions of § 1915 applicable to a 'prisoner,' as defined by § 1915(h), do not apply to those civilly committed under the KSVPA."). Based on those cases, it seems clear that the prisoner pay schedule contained in the PLRA is not applicable to the plaintiff's case. Thus, if a civilly committed plaintiff is entitled to *in forma pauperis* status, that plaintiff may proceed without the payment of fees.

In order to qualify for *in forma pauperis* status, a plaintiff must provide an affidavit with the following statements: (1) statement of the nature of the action, (2) statement that plaintiff is entitled to redress, (3) statement of the assets plaintiff possesses, and (4) statement that plaintiff is unable to pay filing fees and court costs or give security

therefor. 28 U.S.C. § 1915(a)(1). In this case, Willet has filed a motion to proceed *in forma pauperis* that substantially complies with the requirements set out above. Accordingly, the Clerk of Court shall file the plaintiff's complaint. No filing fee will be assessed.

That is not the end of this review, however, because once any portion of a filing fee is waived, I must dismiss the case if the allegations of poverty prove untrue or the action in question turns out to be frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

## II.  42 U.S.C. § *1983 INITIAL REVIEW*
### A.  *The Applicable Standard*

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Pro se* complaints, no matter how "inartfully pleaded are held to less stringent standards than formal pleadings as drafted by a lawyer." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal citations omitted).

Although it is a long-standing maxim that a complaint's factual allegations are to be accepted as true at the early stages of a proceeding, this does not require that a court must entertain any complaint no matter how implausible. The facts pled "must [still] be

4

enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the claim to relief must be "plausible on its face." *Id*. at 570. A claim is only plausible if a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Where the complaint does "not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 1950 (citing Fed. Rule Civ. Proc. 8(a)(2)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 1949.

Thus, to survive initial review, the plaintiff must allege a plausible, non-frivolous claim that a state actor has violated his constitutional rights.

### B. Analysis

In his complaint, Willet alleges that the defendants have violated his constitutional rights because they have discriminated against him on the basis of his sexual orientation.

#### 1. State actors

In Willet's various filings, he names both the State of Iowa and "CCUSO" as defendants. Neither the State of Iowa nor CCUSO, which is a division of the state, are individuals. 42 U.S.C. § 1983 specifically provides for a federal cause of action against a "person" who, under color of state law, violates another's federal rights. In *Will v. Michigan Dept. of State Police*, the Supreme Court ruled "that a State is not a person within the meaning of § 1983." 491 U.S. 58, 63 (1989). Therefore, the plaintiff's § 1983 complaint cannot proceed against the State of Iowa or CCUSO, because neither is a "person" under the law. Accordingly, the State of Iowa and CCUSO must be dismissed from the case.

## 2. *Duplication of claims*

The above-captioned case is not Willet's only case before me. Currently proceeding is case C 11-4090-MWB. Willet filed that case in 2011, and it was assigned to Judge O'Brien.[2] In that case, Willet argues CCUSO employees improperly disclosed his medical status/condition to other CCUSO patients.[3] Judge O'Brien denied the defendants' motion for summary judgment, and the defendants appealed. That appeal is currently pending before the Eighth Circuit Court of Appeals. (See C 11-4090-MWB, docket nos. 62-67).

Although Willet captions this case as one based on sexual discrimination, he also complains about restrictions placed upon his (sexual) contact with other patients. Willet potentially having sexual contact with other patients, and the consequences of any such action, are intrinsically linked to Willet's prior case, C 11-4090-MWB, regarding Willet's medical condition.[4] Accordingly, to the extent Willet raises claims related to his other, on-going case, those claims are dismissed. Willet, through his appointed attorney, may petition the court, as appropriate, regarding the grounds of C 11-4090-MWB under that case caption.[5]

Additionally, as Judge O'Brien has observed on numerous occasions, CCUSO is charged with treating its patients' sexual abnormalities. CCUSO is given broad latitude to regulate patients' sexual activities. As stated by Judge O'Brien in a very similar case,

---

[2] The case was reassigned to me after Judge O'Brien passed away.

[3] Willet made various other claims in that case regarding clothing and haircuts, which Judge O'Brien dismissed. *See* C 11-4090-MWB, docket nos. 25, 62.

[4] The exact nature of Willet's medical condition is subject to a protective order in C11-4090-MWB.

[5] Willet also argues about the (allegedly improper) use of polygraphs at CCUSO. However, Willet has failed to tie that argument to any constitutional violation. Accordingly, it must be dismissed.

> To the extent Mr. Willis argues that CCUSO has sanctioned him for having a sexual relationship while on transitional release, the Court is persuaded that such a claim is unlikely to succeed. *See Taft v. Loescher*, 12-CV-4079-DEO, Docket No. 5. In that case, CCUSO residents filed suit arguing they should be allowed to correspond with an "adult" pen-pal service. This Court stated that the doctors at CCUSO have an obligation to attempt to treat CCUSO patients. Accordingly, CCUSO "has an interest in assuring that the objectives of their therapy sessions are not thwarted… The Plaintiffs are sexually violent predators. They hope to start up adult correspondence through a service designed to do just that. It seems reasonable to the Court that prohibiting such correspondence is within the discretion of those making therapy decisions. Accordingly, even assuming the Defendant prohibited the Plaintiffs from communicating with the aforementioned service, that prohibition does not give rise to a cause of action under 42 U.S.C. § 1983." *Id*. at 11. The Court is persuaded that the same rationale would apply in most cases where CCUSO made decisions regarding acceptable sexual/adult relationships among its patients. Accordingly, to the extent Mr. Willis complains that CCUSO has abridged his constitutional rights in regards to his ability to engage in adult activities while on transitional release, the Court is persuaded that his claim must be denied.

(C 13-4112-DEO, docket no. 5, p. 9-10).[6] CCUSO receives this broad latitude because, "[t]he Supreme Court has confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." *Beaulieu v.*

---

[6] To avoid confusion, Willis, who is referred to by Judge O'Brien, and Willet, who filed the present case, are different CCUSO patients, although their claims are substantially similar.

7

*Ludeman*, 690 F.3d 1017, 1029 (8th Cir. 2012) (internal citations omitted). However, the term "penological" interest is a bit of misnomer in the context of civilly detained patients, because, as Justice Kennedy observed, "while incapacitation is a goal common to both the criminal and civil systems of confinement, retribution and general deterrence are reserved for the criminal system alone." *Kansas v. Hendricks*, 521 U.S. 346, 373, 117 S. Ct. 2072, 2087, 138 L. Ed. 2d 501 (1997) (Kennedy, J., concurring). Accordingly, United States District Judge Donovan Frank, in the District of Minnesota, has adapted the legitimate penological interest standard into the civil commitment context, finding that, "the Court [must consider] each of Plaintiffs' [constitutional] claims in light of appropriate therapeutic interests as well as relevant safety and security concerns." *Karsjens v. Jesson*, 6 F. Supp. 3d 916, 937 (D. Minn. 2014).

### 3. *Discrimination based on sexual orientation*

I next turn to Willet's claim based on sexual discrimination. Willet argues that the defendants have discriminated against him on the basis of sexual orientation in violation of the Fourteenth Amendment's Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a claim under 42 U.S.C. § 1983 for an equal protection violation, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based on his membership in a protected class. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008). Where the challenged governmental action does not involve a protected or suspect classification, a plaintiff must show that similarly situated people were intentionally treated differently without a rational basis for the disparate treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

8

Plaintiff alleges that he suffered disparate treatment based upon his status as a homosexual. Equal protection and the question of whether sexual orientation is a suspect class is a developing area of the law. Only this summer, the Supreme Court ruled that individuals could not be denied the right to marry based on sexual orientation. *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2608 (2015). However, in the same decision, the Supreme Court passed on the opportunity to decide whether sexual orientation amounted to a suspect class for equal protection purposes. *Id.*[7] Accordingly, I must rely on older precedent. The Supreme Court has previously, explicitly, ruled that homosexual persons are protected from discrimination by the Equal Protection Clause of the Fourteenth Amendment. *Romer v. Evans*, 517 U.S. 620, 631–36 (1996). However, in that same opinion, like the other sexual orientation opinions cited above, the Supreme Court failed to find that sexual orientation is a suspect class. Nor am I aware of any Eighth Circuit Court of Appeals decision applying heightened scrutiny based on sexual orientation. Accordingly, Willet is not entitled to base his case on his membership in a suspect class.

That is not the end of the inquiry. Although sexual orientation does not constitute a "suspect or quasi-suspect class" entitled to heightened equal protection scrutiny, a plaintiff's discrimination allegation can only be defeated if such discriminatory regulation, policy, or practice is rationally related to a legitimate governmental purpose. *See Evans*, 517 U.S. at 633–36 (finding state constitutional amendment prohibiting gays

---

[7] In *Obergefell*, Justice Kennedy omitted any discussion of the suspect class issue. However, in the related *Windsor* decision, a year earlier, Justice Kennedy acknowledged that the "suspect class" law was still developing, when he explained one of the government's filings by saying, "the letter instead reflected the [Executive Branch's] own conclusion, relying on a definition still being debated and considered in the courts, that heightened equal protection scrutiny should apply to laws that classify on the basis of sexual orientation." *United States v. Windsor*, 133 S. Ct. 2675, 2683-84 (2013).

and lesbians from seeking protection of the laws bears no rational basis to legitimate state interests). In the context of prisons, a regulation, policy, or practice that discriminates against a group will not survive unless it is "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

In this case, Willet has failed to allege that he or his class were intentionally treated differently without a rational basis for the disparate treatment. In his complaint, Willet acknowledged that there are several gay men committed to CCUSO, stating, "5 peers have been sent back to the committed side [are] homosexual." However, Willet explains that, "I [] am the only homosexual that cannot go into another peer's room. I [] am the only homosexual who must have a camera in his room." docket no. 1-2, p. 2. Although Willet claims the discrimination is based on his sexual orientation, it is clear from the face of his complaint that the defendants' (rational) basis for the disparate treatment is because Willet allegedly had sexual contact with another patient. As I stated above, I agree with Judge O'Brien's finding that determinations related to whether patients may have sexual contact with other patients is a legitimate therapeutic issue at CCUSO. Accordingly, although Willet has made a claim that he was treated differently based on his sexual orientation, he has also made clear that the disparate treatment is actually a result of conduct that CCUSO deems counter-theraputic (having sexual contact with another patient) and that the adverse consequences suffered by Willet were the result of his counter-theraputic conduct.[8] (Additionally, it is worth noting that, although Iowa has only ever civilly committed men as sexual offenders, there is no reason to believe that an

---

[8] This is not to say that a CCUSO patient could never have an equal protection claim based on sexual orientation. Quite the contrary. It is easy to imagine a situation where civilly committed detainees are (unconstitutionally) treated differently based on their orientation. Willet has simply failed to allege such a circumstance.

inappropriate male/female relationship would not be similarly sanctioned by the defendants.) Because it is clear from the face of Willet's complaint that the defendants have a rational basis that is related to a legitimate therapeutic interest for their treatment of Willet, Willet has failed to state a plausible equal protection claim and his complaint must be dismissed.[9]

### III. MOTION TO APPOINT COUNSEL

28 U.S.C. §1915(e)(1) provides that appointment of counsel for a person unable to afford counsel is within this Court's discretion. However, as set out above, I am denying Willet's claim and dismissing this case. Accordingly, his motion to appoint counsel is moot.

### IV. CONCLUSION

For the reasons discussed above, Willet's motion to proceed *in forma pauperis* (docket no. 1) is **granted,** and the Clerk of Court shall file Willet's complaint without the payment of any filing fee. However, upon initial review, it is clear that Willet has failed to state a plausible claim, and his case is **dismissed**. Finally, Willet's motion to appoint counsel (docket no. 2) is **denied *as moot***. The Clerk of Court is directed to send

---

[9] Willet also makes a suggestion that some of the defendants used homophobic language. However, as numerous courts have stated, an allegation that a government official used slurs, standing alone, does not violate the Fourteenth Amendment's guarantee of equal protection. *Williams v. Kaufman County*, 352 F.3d 994, 1013 & n.61 (5th Cir. 2003).

a copy of this order to counsel of record in Willet's other pending case, attorney Jay Denne, and assistant attorney general Gretchen Kraemer.

**IT IS SO ORDERED.**

**DATED** this 8th day of December, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA